1  JOE J. VILLASENOR (Bar No. 265703)
**LEGAL AID SOCIETY OF SAN DIEGO, INC.**
2  110 South Euclid Avenue
San Diego, California 92114
3  Tel.: 619-471-2727
Fax: 619-263-5697
4  Email: joev@lassd.org

5  MICAH S. ADKINS (admitted *pro hac vice*)
**THE ADKINS FIRM, P.C**.
6  7100 Executive Center Drive, Suite 110
Brentwood, Tennessee 37027
7  Telephone: 615-370-9659
Facsimile: 615-370-4099
8  Email: MicahAdkins@ItsYourCreditReport.com
*Attorneys for Plaintiff Kwang Kim*
9

10              **UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
11

12  KWANG KIM, an individual,          Civil Action No. 17-cv-00528-WQH-AGS

13  Plaintiff,

14
**MEMORANDUM IN OPPOSITION TO**
15  vs.                                **SUMMARY JUDGMENT**
**FRCP 56**
16
WILMINGTON TRUST               **DATE: 5/7/2018**
17  COMPANY, owner trustee of      **TIME: 4:00 P.M.**
National Collegiate Student Loan   **JUDGE: HON. WILLIAM Q. HAYES**
18  Trust 2007-4, a Delaware Statutory  **COURTROOM: 14A**
Trust; PENNSYLVANIA HIGHER
19  EDUCATION ASSISTANCE
AUTHORITY, doing business as
20  American Education Systems, a
Pennsylvania Miscellaneous
21  Business Corporation;
TRANSUNION, LLC, a Delaware
22  Corporation; EQUIFAX, GEORGIA
CORPORATION, and DOES 1 to
23  10, Inclusive,

24  Defendants.

25

26

27

28

# TABLE OF CONTENTS

I.      SUMMARY OF ISSUES TO BE DECIDED………………………………1-2

II.     LEGAL STANDARD……………………………………………………2

III.    ARGUMENT……………………………………………………………2-16

        A. Wilmington Trust is the Real Party in Interest……………………….3

            1. A judgment against a trust is a legal nullity in California………4-5

            2. Trustee is the proper defendant for the wrongs of a statutory
            trust……………………………………………………………......5-6

        B. Plaintiff Produced Evidence in Support of His FCRA Claims………6-12

            1. WTC is a furnisher……………………………………………9-10

            2. WTC must comply with the FCRA…………………………..10-11

            3. Plaintiff may recover from WTC under agency or vicarious
            liability theories……………………………………………..11-12

        C. WTC is a Claimant as Contemplated by the CA ID Theft Act…….13-14

        D. WTC Credit Reported Information About Plaintiff to CRAs………14-15

        E. Plaintiff's Recovery is Not Limited to PHEAA…..……………….15-16

IV.     CONCLUSION…………………………………………………………16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Apodaca v. Discover Financial Services*,
    417 F.Supp. 1220 (D. N.M. 2006)……………………………………………9

*Bradbury v. Phillips Petroleum Co.*,
    815 F.2d 1356 (10th Cir.1987)……………………………………………12

*Callahan v. Equifax Info. Serv. L.L.C.*,
    2013 WL 5503949 (N.D. Cal. Oct. 3, 2013)………………………..……6-7

*Edwards v. Toys "R" Us*,
    527 F. Supp. 2d 1197 (C.D. Cal. 2007)……………………………..…11, 12

*Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*,
    436 F. Supp. 2d 1095, 1100 (C.D. Cal. 2006)………………………….....3

*DiMezza v. First USA Bank Inc.*,
    103 F. Supp. 2d 1296 (D. N.M. 2000)…………………………………....6

*Fregoso v. Wells Fargo Dealer Serv., Inc.*,
    2012 U.S. Dist. LEXIS 151785 (C.D. Cal. Oct. 16, 2012)……………..……8

*Gorman v. Wolpoff & Abramson, L.L.P.*,
    584 F.3d 1147 (9th Cir. 2009)……………………………...………………7-8

*Guimond v.  Trans Union Credit Info. Co.*,
    45 F.3d 1329 (9th Cir. 1995)………………………………………………8

*In re iPhone Application Litig.*,
    6 F.Supp. 3d 1004 (N.D. Cal. 2013)…………………….…………………2

*Johnson v. MBNA Am. Bank*,
    357 F.3d 426 (4th Cir. 2003)………………………………………………8

*Jones v. Federated Fin. Reserve Corp.*,
    144 F.3d 961 (6th Cir. 1998)………………………..……………………6, 11

*Kim v. BMW Financial Services, N.A., LLC*,

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

702 Fed. Appx. 561 (9th Cir. 2017)………………………..……………....12

*Krueger By and Through Krueger v. Mammoth Mountain Ski Area, Inc.*,
    873 F.2d 222 (9th Cir. 1989)………………………………………………11

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
    180 F. Supp. 2d 465 (S.D. N.Y. 2011)……………………………………….3

*Le v. Bank of America*,
    2018 U.S. Dist. LEXIS 44100 (D. Nev. 2018)……..………………………8

*Lewis v. Ohio Professional Electronic Network*, *LLC*,
    190 F.Supp. 2d 1049 (S.D. Ohio 2002)……………………………………6

*Long v. Columbia-Arora Joint Venture*,
    2007 WL 4591733 (N.D. Cal. Dec. 28, 2007)………………..……………...2

*Matter of Sommersdorf*,
    139 B.R. 700, 701 (Bankr. S.D. Ohio 1991)………..……………………13

*Meyer v. F.I.A. Card Serv.*,
    780 F. Supp. 2d 879 (D. Minn. 2011)…………………..…………………8

*Portico Management Group, LLC v. Harrison*,
    202 Cal. App. 4th 464 (2011)………………………………………..…3,4, 5

*Presta v. Tepper*,
    179 Cal. App. 4th 909 (2009)………………………………………..…….4

*Reynolds v. Hartford Fin. Serv. Group, Inc.*,
    435 F.3d 1081 (9th Cir. 2006)………………………………………………12

*Rivera v. Bank One*,
    145 F.R.D. 614, 623 (D. P.R. 1993)……………………………………13

*Safeco Ins. Co. of Am.*,
    127 S. Ct. 2201 (2007)…………………………………………………………12

*Saunders v. Branch Banking & Trust Co. of Va.*,
    526 F.3d 142 (4th Cir. 2008)…………………………………………………8

*Serpa v. Jolly King Restaurants, Inc.*,
    62 F.R.D. 626 (S.D. Cal. 1974)…………..…………………………….3

*Stegall v. Cital Broad Co.*,
    350 F.3d 1061, 1065 (9th Cir. 2003)………………………….………2

*United States Bank Nat'l Ass'n. v. Nesbit Bellevue Prop. LLC*,
    859 F. Supp. 2d 602 (S.D.N.Y. 2012)………………………………..3

*Valdez v. Capital Mgmt. Serv., L.P.*,
    2010 WL 4643272 (S.D. Tex. Nov. 16, 2010)………...……………11

*Vasquez-Garcia v. Trans Union de P.R., Inc.*,
    222 F. Supp. 2d 150 (D.P.R. 2002)………….……………………13

*Young v. Partridge*,
    40 F.R.D. 376, 380 (N.D. Miss. 1966)………..…………………….3

## CALIFORNIA CASES

*City of Atascadero* v. *Merill Lynch, Pierce, Fenner & Smith, Inc.*,
    68 Cal. App. 4th 445 (1998)……………………………...…..3, 5-6

*Estate of Bowles*,
    169 Cal. App. 4th 684 (2008)………………….…………….……..4

*Goldwater v. Oltman*,
    210 Cal. 408 (1930)………………………………...…………….5

*Lehmuth v. Long Beach Unified School Dist.*,
    53 Cal. 2d 544 (1960)………..……………………………………15

## FEDERAL STATUTES

15 U.S.C, § 1681n……………………………………...…………….6

15 U.S.C, § 1681o………………………………………….…………6

15 U.S.C. §§ 1681s-2(b)(A-E)…………..……………………………7

20 U.S.C. § 1080a(a)(1-5)……………………………...…………….7

MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR MOTION TO AMEND THE SCHEDULING ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CALIFORNIA STATUTES

Cal. Civ. Code § 1798.92(a)………………………………………….......12

Cal. Rev. & Tax. Code § 23038…………………..…………………………4

Cal. Rev. & Tax. Code § 23038(b)(1)………………………………………5

## FEDERAL RULES

Fed. R. Civ. P. 17(b)(3)……………………………………………………..3

Fed. R. Civ. P. 56(a)……………………………………………………2

## OTHER

Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996)………………………6

MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OR MOTION TO AMEND THE SCHEDULING ORDER

COMES NOW the plaintiff Kwang Kim ("Mr. Kim" or "Plaintiff") and submits his Response in Opposition to Defendant Wilmington Trust Company's Motion for Summary Judgments as follows:

## I.     SUMMARY OF ARGUMENT AND ISSUES TO BE DECIDED.

Mr. Kim brought this action against defendant Wilmington Trust Company ("Defendant" or "WTC") based upon WTC's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) ("FCRA"), California Identity Theft Act ("CAIDT"), and the California Consumer Credit Reporting Agencies Act ("CCCRAA"). First, Plaintiff claims WTC violated the FCRA when it failed to perform a reasonable investigation of Plaintiff's disputes received from a CRA and did not mark the disputed account with the appropriate account in dispute code, in violation of the FCRA. Second, Plaintiff claims WTC violated the CAIDT when it pursued a claim against Plaintiff after WTC received notice of Plaintiff's identity theft claim. Third, Plaintiff claims WTC violated the CCCRAA when it credit reported information it knew or should have known was false to consumer reporting agencies after receipt of Plaintiff's fraud claim.

Now, after the pleadings have closed, WTC now asserts that Plaintiff's claims fail because: (a) WTC is not a proper defendant; (b) WTC is not a furnisher as contemplated by the FCRA; (c) WTC is not a claimant as contemplated by the CAIDT; (d) WTC did not credit report information related to Plaintiff in violation of the CCCRAA; and, (E) Plaintiff cannot recover from WTC and PHEAA separately. WTC bases its this motion upon the flawed arguments that: (1) it does not have a duty to investigate consumer disputes pursuant to the FCRA; (2) it did not pursue a claim against Plaintiff; (3) it did not credit report information related to Plaintiff; and, (4) Plaintiff may not recover from WTC if PHEAA is dismissed from this lawsuit.

-1-

Defendant's motion must be denied.   WTC's challenge of its FCRA obligations misreads the FCRA.  Further, the undisputed facts demonstrate that not only did WTC have an obligation to investigate disputes from CRAs, but WTC also pursued a claim against Plaintiff on the underlying account and credit reported information about Plaintiff *after* notice that Plaintiff was a victim of fraud. Moreover, WTC improperly solicits an advisory opinion from the Court on a issue that is not presently before the Court.  Moreover, there are genuine disputes as to material facts in this case, and the questions of agency, vicarious liability, reasonableness and damages are all questions for the jury.  This case should proceed to a jury without further delay.

## II.   LEGAL STANDARD

"Summary judgment is proper where the pleadings, discovery, and affidavits show that there is 'no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law.'" *In re iPhone Application Litig.,* 6 F.Supp. 3d 1004, 1011 (N.D. Cal. 2013) (quoting Fed. R. Civ. P. 56(a)).  If the moving party does not satisfy its initial burden of producing evidence demonstrating its entitlement to judgment in its favor, "the non-moving party has no obligation to produce anything and summary judgment must be denied." *Long v. Columbia-Arora Joint Venture*, 2007 WL 4591733, at *2 (N.D. Cal. Dec. 28, 2007).  At the summary judgment stage, the Court must view evidence in the light most favorable to the nonmoving party and draw all inferences in favor of the party opposing the motion. *Stegall v. Cital Broad Co.,* 350 F.3d 1061, 1065 (9th Cir. 2003).   Because all of the evidence proffered by WTC and all of the relevant legal authority demonstrate that there exists a genuine issue of material fact, WTC's motion must be denied.

## III.   ARGUMENT

-2-

## A. Wilmington Trust is the Real Party in Interest

Defendant WTC's motion argues that it is not the trust, *e.g*, National Collegiate Student Loan Trust 2007-4 ("Trust"). Plaintiff agrees that WTC is not the trust, rather Plaintiff WTC as owner trustee of the Trust is the proper and only party to sue for conduct involving the Trust. WTC's purported real party in interest defense, raised for the first time at summary judgment, obfuscates trust law principles in an effort to distract from its unlawful conduct. WTC failed to assert the real party in interest defense in Defendant WTC's answer and affirmative defenses. (ECF 41). The defense of lack of capacity or authority to sue or be sued must be specifically averred else it is waived. Fed. R. Civ. P. 12(g).

Fed. R. Civ. P. 17(b)(3) determines the capacity to sue or be sued based on the law of the forum. *Young v. Partridge*, 40 F.R.D. 376, 380 (N.D. Miss. 1966); *Serpa v. Jolly King Restaurants, Inc.*, 62 F.R.D. 626, 631-32 (S.D. Cal. 1974). At the same time, WTC concedes the law of the forum applies, relying on *dicta* from a single California decision, *Portico*. Indeed, *Portico* supports Plaintiff's position that a trustee is the real party in interest and the proper party defendant to sue in cases involving trusts.

Further, the *City of Atascadero* decision confirms the long-standing black letter rule that a trustee is the real party in interest in the context of statutory investment trusts, such as the Trust in this case. *City of Atascadero* v. *Merill Lynch, Pierce, Fenner & Smith, Inc.,* 68 Cal. App. 4th 445, 461-462 (1998); *See also* Costello Decl., ECF 57-6, ¶ 2. *Estate of Migliaccio v. Midland Nat'l Life Ins. Co.,* 436 F. Supp. 2d 1095, 1100 (C.D. Cal. 2006) (holding the trustee is the real party in interest under Rule 17); *see also United States Bank Nat'l Ass'n. v. Nesbit Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 607-08 (S.D.N.Y. 2012); *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 180 F. Supp. 2d 465, 471 (S. D. N. Y. 2011).

-3-

1

### 1. A judgment against a trust is a legal nullity in California.

*Portico* appealed the confirmation of arbitration award entered against a trust rather than against the real parties in interest, the trustees of the trust. *Portico Management Group, LLC v. Harrison*, 202 Cal. App. 4th 464, 466 (2011). Portico (the claimant in the arbitration proceeding) properly named the trustees as defendants at the outset, but ultimately sought entry of the award against two trusts, not the corresponding trustees. *Id*. The appellate court confirmed the long-held California trust principles in agreeing that the trustees were the real parties in interest: "A trust is not a person but rather "a fiduciary relationship with respect to property." *Id*. at 473. Legal title to property owned by a trust is held by the trustee… 'A…trust… is simply a collection of assets and liabilities.'" *Id*. A trust itself cannot sue or be sued. *Id*. (citing *Presta v. Tepper*, 179 Cal. App. 4th 909, 914 (2009)). As a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf. *Id*. (citing *Estate of Bowles*, 169 Cal. App. 4th 684, 691 (2008)).

In light of these longstanding principles, the appellate court confirmed the unenforceability of the arbitration award against the trusts and affirmed the court's judgment denying Portico's attempt to add the trustees as judgment debtors to the unenforceable award against the trusts. *Portico*, at 162.

In an effort to benefit from *dicta* in *Portico*, WTC appears to pivot from identifying itself as a *statutory trust* to considering itself a "*business trust*." In *dicta*, the court explained that Massachusetts business trusts recognized under California's Revenue and Taxation Code § 23038 may be accorded different treatment than other trusts in determining the real party in interest. In *dicta*, the court explained that Massachusetts business trusts recognized under California's Revenue and Taxation Code section 23038 may be accorded different treatment than other trusts in determining the real party in interest. Hedging this way is problematic for WTC, because Massachusetts Trusts are a legislatively defined term of art in California law

-4-

and must meet certain criterion to be recognized as such. Importantly, WTC is a banking association, which the California legislature specifically excluded from section 23038.  Cal. Rev. & Tax. Code § 23038(b)(1); (Ex. E, *Plaintiff's Evidence in Opposition to Summary Judgment*, Costello Depo. Ex. 2, p. S-36).

Additionally, in order to qualify as a Massachusetts or business trust, the trustee must have "complete power of management … free from control of the creators of the trust." *Goldwater v. Oltman*, 210 Cal. 408, 416 (1930). WTC admittedly lacks such power, claiming it requires owner direction. (Ex. E, *Plaintiff's Evidence in Opposition to Summary Judgment,* Costello Depo. pp. 71:14; 132:7-12). It also must comply with California fictitious business name laws—for which it has not and cannot proffer any supporting evidence.   WTC does not benefit from the *dicta* in Portico as it fails to meet the strict requirements of a Massachusetts business trust and fails to offer any evidence that it meets the strict requirements of the legislatively defined legal term of art.

Hedging this way is problematic for WTC because "Massachusetts Trust" is a legal term of art under California law. In order to qualify as a Massachusetts or business trust, the trustee must have "complete power of management … free from control of the creators of the trust." *Goldwater v. Oltman*, 210 Cal. 408, 416 (1930). Business associations are expressly excluded § 23038.  *See* Cal. Rev. & Tax. Code 23038(b)(1).

### 2.  Trustee is the proper defendant for the wrongs of a statutory trust.

Under California law, only the trustee for a statutory trust can be the real party in interest.  *City of Atascadero* v. *Merill Lynch, Pierce, Fenner & Smith, Inc.,* 68 Cal. App. 4th 445, 461-62 (1998).   In *City of Atascadero*, the statutory trust contained a pool of funds deposited by various public entities with the trustee. At issue was whether a statutory trust's beneficiaries had standing to sue the trustees and third

-5-

parties who acted together to the detriment of the trust. *City of Atascadero*, at 460-61 (1998).  Absent certain exceptions, the trustee is the real party in interest for the statutory trust, however the beneficiaries fell within an exception, affording them standing to sue. *Id*. at 460, 462.  The court reiterated the principle that the trustee was the real party in interest in "the leading treatises on the law of trusts." *Id*. at 464-65 Citing 4 Scott on Trusts §§ 281-282, pp. 21-28.

Here, WTC admits that it is the owner trustee of the Trust. (ECF 57-7, ¶12). It also admits it is a Delaware statutory trust. The purpose of the Trust is to purchase student loan debt as collateral to sell securities to investors. This is remarkably similar to the trust at issue in *City of Atascadero*. WTC is the real party in interest for claims against the Trust under the law of the forum.

## B. Plaintiff Produced Evidence in Support of His FCRA Claims

Regarding Plaintiff's FCRA claims, Mr. Kim has presented substantial evidence and material facts that demonstrate WTC credit reported the account related to Plaintiff, received notice from a consumer reporting agency of Plaintiff's dispute, and can be held vicariously liable for the unlawful acts of its agents.

The FCRA is remedial legislation, which is to be liberally construed in favor of consumers. *See Lewis v. Ohio Professional Electronic Network, LLC,* 190 F.Supp. 2d 1049, 1057 (S.D. Ohio 2002) (citing *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961 (6th Cir. 1998).  Any "person" who fails to comply with any requirement with respect to a consumer may be liable under the FCRA.  15 U.S.C. §§ 1681n and o.

Prior to the 1996 Reform Act only users and consumer reporting agencies ("CRAs") were liable under the FCRA. Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996). The term "furnisher" is undefined by the FCRA. *DiMezza v. First USA Bank Inc*., 103 F. Supp. 2d 1296, 1299 (D. N.M. 2000).  Reporting information to a consumer reporting agency qualifies the reporting entity as a "furnisher" for FCRA

-6-

purposes. *Callahan v. Equifax Info. Serv. L.L.C.*, 2013 WL 5503949 (N.D. Cal. Oct. 3, 2013) ("the term 'furnisher' includes someone who furnishes information to a CRA in response to the CRA's inquiry on the credit status of someone, even if the furnisher has no account at all for the subject"; rejecting bank's argument that, although its debt was listed on plaintiff's credit report, it was not a furnisher because the plaintiff never had an account with it: "Narrowing the definition of furnisher as defendant suggests would leave the CRAs and plaintiff with no way to verify the SunTrust entry because SunTrust would have no duty to investigate"). Further, federal law imposes a mandatory requirement on the lender to credit report to CRAs delinquent student loan information, including the past due balance, repayment status of the loan and the date the loan went into default. 20 U.S.C. § 1080a(a)(1-5).

Once furnishers receive a notice of dispute regarding accuracy of credit information, they shall:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to . . . [15 U.S.C. § 1681i(a)(2)];

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies . . .;

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete . . . for purposes of reporting to a consumer reporting agency . . . promptly –

      (i) modify that item of information;
      (ii) delete that item of information; or
      (iii) permanently block the reporting of that item of information.

15 U.S.C. §§ 1681s-2(b)(A-E); *see also Gorman v. Wolpoff & Abramson, L.L.P.*, 584

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

F.3d 1147, 1154 (9th Cir. 2009).  A private cause of action also arises under 1681s-2(b) when the furnisher reports incomplete or inaccurate information to a CRA, such as that the account is *not* in dispute when the consumer continues to dispute the account.  *Gorman*, at 1161-1164; *Saunders v. Branch Banking & Trust Co. of Va*, 526 F.3d 142, 150 (4th Cir. 2008).

The furnisher's investigation must be a substantive examination of the merits of the consumer's dispute. *Johnson v. MBNA Am. Bank*, 357 F.3d 426, 431 (4th Cir. 2003). "Requir[ing] some degree of careful inquiry" as opposed to a merely "superficial" inquiry.  *Id*., at 430. A reasonable investigation may require the furnisher go beyond its own records and contact third parties. *Fregoso v. Wells Fargo Dealer Serv., Inc.*, 2012 U.S. Dist. LEXIS 151785, *27 (C.D. Cal. Oct. 16, 2012) (denying summary judgment to furnisher in an identity theft case, noting that furnisher's employee "never contacted any outside parties, including plaintiff, to clear up any disputes where there might be confusion on an issue."); *Meyer v. F.I.A. Card Serv.*, 780 F. Supp. 2d 879, 883 (D. Minn. 2011) (denying summary judgment to furnisher in identity theft case wherein furnisher failed to talk to police, alleged thief, or compare signatures on checks).  Most recently, one court in this Circuit denied a defendant's motion for summary judgment as to the reasonableness of its FCRA procedures "because Equifax does not provide undisputed evidence that it adequately supervised the [vendor] entities' efforts to comply with Equifax's obligations under the FCRA." *Le v. Bank of America*, 2018 U.S. Dist. LEXIS 44100, *13 (D. Nev. 2018).

Whether a furnisher conducted a reasonable FCRA investigation is a question for the jury. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).  Likewise, the FCRA imposes damages on furnishers to the extent its violations are determined to be willful. 15 U.S.C. §1681n(a). Questions of fact

---

regarding willfulness should be determined by the jury.  *Apodaca v. Discover Financial Services*, 417 F.Supp. 1220, 1234 (D. N.M. 2006) (whether punitive damages should be awarded is a question for the jury).

### 1.  WTC is a furnisher.

Here, in violation of the FCRA, WTC credit reported the account, received a dispute from a CRA, and verified the disputed information without performing a reasonable investigation or identifying the account as in dispute.  First, in September 2015, WTC credit reported the following, *inter alia*, information to Equifax about Plaintiff and the account:

| Account Name: | **NATIONAL COLLEGIATE** |
|---|---|
| **Account Number** | **3085118472PA0XXXX** |
| **Status** | **Charge-Off** |
| **Account Owner** | **Co-Maker** |

(Exhibit C to Kim's Declaration, Excerpts from Plaintiff's and Trans Union's credit reports.)  Importantly, the name of the account was reported as "National Collegiate."  *Id*.  Likewise, Trans Union, another consumer reporting agency, reported the account with the following information:   Account Name AES/NCT; Account Number 3085118472PA0XXXX; Remarks Unpaid Balance Charged-Off.  *Id*.

-9-

Moreover, in December 2015, Equifax notified Mr. Kim that "the original source of the information" was National Collegiate Trust. (Ex. G to Kim's Declaration). Equifax reported the same account number with the account name National Collegiate Trust. *Id*. Thus, Defendant is clearly a furnisher of information as contemplated by the FCRA.

## 2. WTC must comply with the FCRA.

Second, WTC failed to comply with its duties under the FCRA. Plaintiff followed the FCRA dispute process with WTC. Plaintiff made a written dispute to Equifax in November 2015. In response, Equifax responded to Plaintiff stating:

> We have researched the credit account. Account #308518472PA0XXXX. The results are: We verified that this item belongs to you**. Additional information has been provided from the original source regarding this item. If you have additional questions about this item please contact National Collegiate Trust**, 1200 N 7th St. Harrisburg, PA 17102-1419 Phone: (800) 233-0557

(Ex. A, *Kim Decl.*, ¶¶ 17, 20); *See also* Ex. G to Kim's Declaration) (bold supplied)). Equifax also informed Mr. Kim:

> Please note, when you provide documents, including a letter, to Equifax, as a part of our dispute, the documents may be submitted **to one or more of the companies whose information are the subject of your dispute**.

*Id*. (bold supplied). In other words, one may infer Equifax, a CRA, notified National Collegiate Trust (the source of the information) of Plaintiff's FCRA dispute. Equifax may also have provided a copy of Plaintiff's dispute letter and supporting documents to Defendant, too.

-10-

MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant conducted an investigation of the disputed account.  (Ex. C, *Harris Depo.*, pp. 79:8 – 80:22).  Notwithstanding, WTC now attempts to shirk its FCRA duties and contends that another defendant, PHEAA, is responsible for complying with the FCRA as it "handled all relevant reporting for this particular Loan, as well as the investigation of Plaintiff's fraud claim."  (ECF 57, p. 10).  WTC also admits that it made no effort to supervise or monitor the performance of servicers of the student loans owned by the trust, *e.g.* PHEAA. (ECF 57-6, ¶ 22).  Thus, like *Le*, it is a genuine issue of fact whether WTC engaged in unlawful conduct in reckless disregard of Mr. Kim's FCRA rights.

### 3.  Plaintiff may recover from WTC under agency or vicarious liability theories.

A court may impose vicarious liability under the FCRA.  *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1211-12 (C.D. Cal. 2007); *see also Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998) ("Failure to impose vicarious liability on a corporation… would allow it to escape liability for 'willful' or 'negligent' violations of the statute. Because a company… can act only through its agents, it is difficult to imagine a situation in which a company would ever be found to have willfully violated the statute directly by obtaining a credit report for an impermissible purpose"). The application of vicarious liability under the FCRA is necessary because "it would [otherwise] be very difficult to hold a corporation liable under the statute." *Edwards*, 527 F. Supp. 2d, at 1212. (citing *Jones*, 144 F.3d at 966).

A company's liability for violating the FCRA may in fact be predicated upon the acts of its agents. *See*, *e.g.*, *Valdez v. Capital Mgmt. Serv., L.P.* 2010 WL 4643272, at *16. (S.D. Tex. Nov. 16, 2010) (finding that debt buyer, which forwarded to its agents information about a debt which it knew was not the consumer's, knowing they would access his credit report, could be held liable for violating the FCRA). *See*

-11-

*also Reynolds v. Hartford Fin. Serv. Group, Inc.*, 435 F.3d 1081 (9th Cir. 2006) (*rev'd* on other grounds *sub nom. Safeco Ins. Co. of Am.*, 127 S. Ct. 2201 (2007)).

Agency is a factual issue that should be determined by the jury. *See Krueger By and Through Krueger v. Mammoth Mountain Ski Area, Inc.*, 873 F.2d 222, 223 (9th Cir. 1989) ("Whether this [principal-agent] relationship exists is a question of fact left for the trier of fact."); *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1213 (C.D. Cal. 2007); *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1360-61 (10th Cir. 1987) ("the relationship of principal and agent is ordinarily a question of fact").

Here, WTC delegated or controlled the actions of its agents acting on its behalf in order to service and collect on student loans. Indeed, WTC did so through contractual agreements, including a servicing agreement. WTC also has veto authority over the Trust's parties' conduct, including the owners of the Trust. According to the National Collegiate Student Loan Trust 2007-4 prospectus, to which WTC is a party, the purpose of the Trust is to purchase, service, and sell securities from such loans and WTC holds legal title to the student loans. PHEAA serviced loans on behalf of National Collegiate Trust. Further, PHEAA used National Collegiate Trust letterhead while servicing loans and credit reporting on behalf of the Trust.

WTC argues Plaintiff failed to allege theories of agency or vicarious liability in his Complaint. (ECF 57, pp. 10-11). However, that is incorrect. Plaintiff specifically pled:

> At all times pertinent hereto, the conduct of the defendants as well as that of their agents, servants and/or employees, was intentional, willful, reckless, negligent, and in grossly negligent disregard of for federal law, state law and the rights of Plaintiff herein.

(ECF 1, ¶ 37). Thus, WTC's argument is meritless as Plaintiff sufficiently pled his agency or vicarious liability theory in his Complaint.

-12-

1

2

### C. WTC is a Claimant as Contemplated by the CA ID Theft Act.

3

Defendant argues that is not a claimant under the CAIDT, thus, bears no

4

liability.  A claimant is "a person who has or purports to have a claim for money or

5

an interest in property in connection with a transaction procured through identity

6

theft."  Cal. Civ. Code § 1798.92(a). A person who credit reports "a derogatory

7

tradeline at the time the plaintiff filed suit," may be a claimant.  *See Kim v. BMW*

8

*Financial Services, N.A., LLC*, 702 Fed. Appx. 561, 563 (9th Cir. 2017).  Indeed, the

9

threat of negative credit reporting by a creditor or debt collector "is a powerful tool

10

designed, in part, to wrench compliance with payment terms."  *Rivera v. Bank One*,

11

145 F.R.D. 614, 623 (D. P.R. 1993) (superseded by statute with respect to furnisher

12

liability *Vasquez-Garcia v. Trans Union de P.R., Inc.*, 222 F. Supp. 2d 150 (D.P.R.

13

2002). *Accord Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991)

14

Here, WTC is clearly a claimant, pursuant to the CAIDT, as alleged by

15

Plaintiff.  Mr. Kim is a victim of identity theft, and he did not consent to anyone using

16

his personal identifying information to obtain the account. (ECF 28-1, *Kim Decl*. ¶4).

17

Further, Mr. Kim notified Defendant of his identity theft claim on multiple occasions,

18

and in writing, prior to the filing of this lawsuit and as early as June 7, 2013.  (Ex. A,

19

*Kim Decl.*, ¶17).   Notwithstanding, the Trust continued to pursue Mr. Kim for

20

payment of the fraudulent debt since 2013.  (ECF 28-1 ¶7).  Defendant, on behalf of

21

the Trust, is responsible for servicing and collecting on the accounts in the Trust,

22

including the account in this case.  Accordingly, Defendant sent Plaintiff dunning

23

letters seeking payment for the delinquent account.  (Ex. A, p. 23, Plaintiff's Ex. A,

24

*Letters from NCT to Kim*).

25

DEAR KWANG N KIM:

26

27

You are now at least 150 days past due on the student loan you cosigned for

-13-

28

MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

> SARAH J. LEE. In accordance with the terms of your loan agreement, the entire principal balance  and accrued interest will soon be due in full unless you act.  If you pay the TOTAL PAST DUE AMOUNT FOR ALL LOANS by the DUE DATE (each listed on <u>reverse of this letter</u>), you may continue with your contact.  If you do not pay the total amount by this  date,  we  may exercise our rights under the law.
>
> You may be obligated to pay reasonable costs of collection, including but not limited to court costs, attorney fees and collection agency fees as allowable under applicable law, and the account(s) will be sent to a recovery agency and reviewed for legal action.

*Id*. The dunning letter was written on the Trust's letterhead and included Defendant's logo. *Id*. WTC also threatened Mr. Kim that it would credit report the fraudulent account if he did not pay. "P.S. Call 1-800-649-6034 to avoid additional collection calls and further damage to your credit history." *Id*. Defendant's collection efforts escalated, and on or about August 25, 2015, the Trust sued Plaintiff for the underlying account. (Ex. A, *Kim Decl*. ¶8). Defendant sought $36,029.75 from Plaintiff. *Id*. Defendant's lawsuit was subsequently dismissed with prejudice on December 10, 2015. *Id*., at ¶12.

Relentless in its pursuit of Mr. Kim, WTC made good on its threat to credit report the delinquent account related to Plaintiff *after* receipt of his identity theft claim and dismissal of its lawsuit.  As stated above, Defendant's name appeared on the delinquent account reported by Equifax with the worst possible credit rating, "Charge-Off."  Equifax also identified Defendant as "the original source of the information," which appeared on his credit report with the account name "NATIONAL COLLEGIATE."  Clearly, WTC is a claimant as contemplated by the CAIDT.

### D. WTC Credit Reported Information about Plaintiff to CRAs.

WTC argues that it did not credit report information about Plaintiff, thus, escapes liability under the CCCRAA.  (ECF 56, p. 22).  Pursuant to the CCCRAA,

-14-

1
2
3
4
5
6
7
8
9

Plaintiff is a consumer and WTC is a person.  Cal. Civ. Code §§ 1785.3(b) and (j).

Here, WTC credit reported the subject account to Equifax at least since July 31, 2013, and after receipt of Mr. Kim's fraud affidavit.  (ECF 28-1, ¶7).  During this time period, Mr. Kim supplied Defendant with ample indicia of fraud, including letters from other lenders accepting his fraud claim, fraud affidavit, signature exemplars, authorization to share information with law enforcement, a police report, which identified the purported identify thief, his driver's license and a forensic handwriting report all in support of his fraud claim.  *See* ECF 28-4.

10
11
12
13
14
15
16
17
18
19
20
21

As stated above, Defendant threatened to credit report the account if Mr. Kim failed to pay.  The account appears on Plaintiff's Equifax credit report with the account name "NATIONAL COLLEGIATE."  Also, Equifax informed Plaintiff that Defendant was the original source of the information related to the fraudulent account, which appeared on Plaintiff's Equifax report.  Defendant continued to credit report the account to Equifax at least until March 31, 2016.  (ECF 28-1, at ¶14).  Further, the account was not reported with the account in dispute code.  By way of example, Plaintiff's December 21, 2015 credit report prepared by Equifax did not include any notation that the account was in dispute.  Thus, Defendant did credit report the account after it knew or should have known that the information was incomplete or inaccurate.

22
23

### E.  Plaintiff's Recovery is Not Limited to PHEAA.

24
25
26
27

Defendant WTC ends its brief by pondering the hypothetical outcome of what would be the outcome of the claims asserted against it if the claims asserted against PHEAA were dismissed from this lawsuit.  First, *Lehmuth v. Long Beach Unified School Dist.* 53 Cal. 2d 544 (1960), is inapposite to the claims in this case, both

28

-15-

legally and factually, and is not controlling in this court (California law decision interpreting *respondeat superior* liability in an automobile personal injury case). Second, the hypothetical is improper because the issue argued by Defendant is not currently before the court.  PHEAA did not move for summary judgment and has not been dismissed from the instant lawsuit. Instead, Plaintiff, PHEAA, and WTC will all go to trial. Thus, WTC's hypothetical argument seeks an improper advisory opinion is not appropriate for summary judgment.

## IV.   CONCLUSION

For all the above reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment

Dated:        April 23, 2018.

Respectfully submitted,

*/s/ Joe. J. Villasenor*
JOE J. VILLASEÑOR (Bar No. 265703)
**LEGAL AID SOCIETY OF SAN DIEGO, INC.**
110 South Euclid Avenue
San Diego, California 92114
Tel.:  619-471-2655
Fax:  619-263-5697
Email:  joev@lassd.org

Micah S. Adkins (admitted *pro hac vice*)
**THE ADKINS FIRM, P.C.**
7100 Executive Center Drive, Suite 110
Brentwood, TN 37027
Telephone:  615-370-9659
Facsimile:   615-370-4099
Email:        MicahAdkins@ItsYourCreditReport.com
*Representing Plaintiff Kwang Kim*

-16-

1
2          **PROOF OF SERVICE**

3     STATE OF TENNESSEE

4     WILLIAMSON COUNTY

5
6          I am employed in Brentwood, TN.  I am over the age of 18 and not a party to

7     the within entitled action.  My business address is 7100 Executive Center Drive, Suite

8     110, Brentwood, TN 37027.

9
10         On April 23, 2018, I served true copies of the following document(s) described

11    as:

12
13    **Plaintiff's Response In Opposition to Defendant's Motion for Summary**

14                          **Judgment**

15    To the following counsel of record:

16    **See attached Service List.**

17
18    I declare under penalty of perjury under the laws of the United States of America that

19    the foregoing is true and correct and that I am a *pro hac* vice member of the bar of

20    this Court.

21
22
23         Executed April 23, 2018.

24
25         ***/s/ Micah S. Adkins***
             Micah S. Adkins
26
27
28                              -17-

1

2

**SERVICE LIST**

3

4

5 **By CMECF on April 23, 2018**:
Donald E. Bradley

6 Musick, Peeler & Garrett LLP

7 650 Town Center Drive, Suite 1200
Costa Mesa, California 92626-1925

8

9 Britt M. Roberts, Esq.
REED SMITH LLP

10 101 Second Street, Suite 1800
San Francisco, CA  94105

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-18-

MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT