UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KWANG KIM, an individual,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>WILMINGTON TRUST COMPANY, owner trustee of National Collegiate Student Loan Trust 2007-04, a Delaware Statutory Trust; PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AUTHORITY, doing business as American Education Systems, a Pennsylvania Miscellaneous Business Corporation; TRANSUNION, LLC, a Delaware Corporation; EQUIFAX INFORMATION SERVICES, LLC, a Georgia corporation; and DOES 1 to 10, inclusive,<br><br>　　　　　　　　　Defendants. | Case No.: 17cv528-WQH-AGS<br><br>**ORDER** |

HAYES, Judge:

　　The matter before the Court is the motion for summary judgment filed by Defendant Wilmington Trust Company. (ECF No. 57).

## I. BACKGROUND

On March 16, 2017, Plaintiff Kwang Kim initiated this action by filing a Complaint against Defendants Wilmington Trust Company, owner trustee of National Collegiate Student Loan Trust 2007-4; Pennsylvania Higher Education Assistance Authority, doing business as American Education Systems ("PHEAA/AES"); TransUnion, LLC ("TransUnion"); and Equifax. (ECF No. 1). Plaintiff alleges the following claims against Defendant Wilmington Trust Company ("WTC"): negligent noncompliance with the Fair Credit Reporting Act ("FCRA"), willful noncompliance with the FCRA, violations of the California Identify Theft law, and violations of the California Consumer Credit Reporting Agencies Act ("CCCRAA"). *Id.* These claims arise out of allegations that Kim was a victim of identity theft in connection with a fraudulent student loan account created in Kim's name. Kim brings claims premised on WTC's alleged wrongful conduct in credit reporting and collection efforts on this disputed loan ("the Loan"). *Id.*

On April 2, 2018, WTC filed a motion for summary judgment asserting that it is entitled to summary judgment on all claims. (ECF No. 57). On April 23, 2018, Kim filed a response in opposition. (ECF No. 68). On April 30, 2018, WTC filed a reply. (ECF No. 74).

## II. FACTS

Sometime before 2013, Sarah J. Lee, who is related to Kim, executed a Loan Agreement which names Lee as a borrower and Kim as the co-signer of the loan. (SUF, ECF No. 68-2, ¶¶ 2–4). In 2013, Kim began receiving collection letters from KeyBank and other entities. *Id.* ¶ 5. The collection letters addressed to Kim from KeyBank included Lee's name. *Id.* ¶ 6.

Ethan Kim, Kwang Kim's son, testified that after his father received the collection letters, he contacted the police for his father on or about March 11, 2013. *Id.* ¶ 7. Ethan testified that he completed an identity theft affidavit executed by Kim on June 17, 2013 and sent the affidavit and letter outlining the identity theft to PHEAA/AES as servicer of

the loan. *Id.* ¶¶ 9–10. PHEAA/AES testified that it reported information and status on the Loan to Equifax, Experian, TransUnion, and Innovis. *Id.* ¶ 11.

WTC serves as owner trustee of the National Collegiate Student Loan Trust 2007-4 (the "NCSL Trust"). *Id.* ¶ 12. Dorri Costello, Vice President in the Global Capital Markets Unit of WTC, provides a declaration which states:

> 2. WTC serves as Owner Trustee of the National Collegiate Student Loan Trust 2007-4, a Delaware Statutory Trust (the "Trust") governed by Trust Agreement dated as of September 20, 2007 (the "Trust Agreement") among WTC as Owner Trustee, and The National Collegiate Funding LLC and the Education Resources Institute, Inc., as the initial Owners. In its capacity as Owner Trustee, WTC serves as an accommodation party primarily to meet the requirement of the Delaware Statutory Trust to have a trustee residing in Delaware. Whenever WTC acts as Owner Trustee it is doing so solely on behalf of the Trusts, and not for its own account.
> 3. The Trust is a separate legal entity formed for the purpose of issuing notes secured by a pool of student loans in what is called a "structured finance" transaction. The Trust contracts with various parties to perform the necessary functions, including without limitation various servicing agreements and a trust indenture for the notes (collectively, the "Transaction Documents"). Since inception, the Trust engaged an administrator, currently GSS Data Services, Inc. (the "Administrator") to generally cause the Trust to perform its duties under the Transaction Documents.
> 4. The Transaction Documents were generally executed by WTC, not in its individual capacity but solely as Owner Trustee on behalf of the Trust, pursuant to directions by the Administrator or the beneficial owners of the Trust (the "Owners"). The Transaction Documents are administered by the Administrator.
> 5. I have received the Complaint filed in this action and understand[] that it relates to a 2007 student loan (the "Loan"), owned by the Trust, which was extended to Sarah J. Lee and purported to be guaranteed by Plaintiff.
> 6. WTC, as sued in its capacity as owner trustee of National Collegiate Student Loan Trust 2007-04, is not a servicer of student loans and has never serviced the Loan at issue in the Complaint.
> 7. All student loans owned by the Trust, including the Loan at issue in the Complaint, are serviced by other entities.
> 8. WTC, as trustee of the Trust, does not collect student loan debt.
> 9. WTC has never initiated any collection proceedings or made any collections efforts as to the Loan.
> 10. WTC has never contacted Plaintiff for any reason relating to the subject

3

student loan.

11. WTC does not maintain its own records of payments made under the student loan agreements owned by the Trust, and, therefore, does not report the status of payments to credit bureaus or other entities.

12. WTC does not possess payment records as to the Loan.

13. WTC has never reported or furnished information to credit bureaus regarding the Loan at issue in the Complaint or any other loan owned by the Trust.

14. WTC has never reported or furnished information to credit bureaus regarding Plaintiff.

15. WTC never received, investigated or responded to any ACDV or other credit dispute relating to the Loan or the Plaintiff.

16. WTC does not receive or respond to ACDV's relating to any loans owned by the Trust.

17. WTC never received any allegation, report or claim of identity theft relating to the Loan or Plaintiff.

18. WTC never conducted an investigation into any allegation, report or claim of identity theft relating to the Loan or Plaintiff.

19. At no time prior to the filing of the instant litigation was WTC made aware of a credit-reporting dispute or identity theft claim involving the Loan or Plaintiff.

20. All collection activities, credit reporting and similar servicing activities required for the student loans owned by the trust are performed by servicing entities.

21. WTC, as trustee is also not involved in the origination of student loans.

22. WTC does not monitor the performance of any servicers contractual obligations to the Trust as this is done by the Administrator.

23. WTC never directed PHEAA in its loan servicing activities with respect [to] the subject Loan.

24. PHEAA never contracted WTC with regards to the subject Loan or Plaintiff regarding the credit reporting for the Loan or Plaintiffs allegations of identity theft.

25. WTC never provided direction, instruction, guidance to PHEAA in how PHEAA reported information to credit bureaus regarding the Loan or handled disputes with Plaintiff regarding the Loan.

(WTC Decl., ECF No. 57-6).

On August 31, 2015, the "National Collegiate Student Loan Trust 2007-04, a Delaware Statutory Trust" filed a collection action against Kim in the Superior Court of California, County of San Diego at 37-2015-00029537-CU-CL-CTL, which was

subsequently dismissed with prejudice.[1] (SUF, ECF No. 68-2, ¶ 31; Kim Decl., ECF No. 68-1, ¶ 8; RJN, ECF No. 68-4 at 4–23).

The parties provide extensive communications between PHEAA/AES, various consumer reporting agencies, and Kim about the status of the disputed loan, collection efforts, and resolutions of Kim's disputes. Some of the documents from PHEAA/AES include a NCSL Trust logo. The documents do not reference WTC.

## III. LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). The burden shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 322, 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson*, 477 U.S. at 255. To avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law. *See Berg v.*

---

[1] Kim's request for judicial notice of the NCSL Trust's Complaint against Kim and request for dismissal with prejudice in San Diego Superior Court Case No. 37-2015-0029537-CU-CL-CTL (ECF No. 68-4) is granted. *See* Fed. R. Evid. 201; *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation and internal quotations omitted) (holding that courts may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

*Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, the nonmovant must designate which specific facts show a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

**IV. DISCUSSION**

**A. Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)**

Kim brings a claim under 15 U.S.C. § 1681s-2(b) for negligent noncompliance with the FCRA and willful noncompliance with the FCRA for WTC's "failure to comply with the requirements of the FCRA." (ECF No. 1 at 20, 7 n.3). Kim contends that WTC violated the FCRA when WTC failed to perform a reasonable investigation of Kim's dispute after a consumer reporting agency notified WTC about the dispute, and when WTC failed to properly notate the disputed account with the appropriate dispute code.

WTC contends that the FCRA claims against WTC fail as a matter of law because Kim fails to present any evidence that WTC furnished information to consumer reporting agencies or received a dispute from a credit reporting agency. Kim contends that WTC is a furnisher within the meaning of the FCRA based on information in credit reports to Equifax in September 2015 and Equifax's notification to Kim in December 2015 that the original source of the information was the NCSL Trust. Kim contends that Equifax notified the NCSL Trust of Kim's FCRA dispute and that there is a genuine issue of fact as to "whether WTC engaged in unlawful conduct in reckless disregard of Mr. Kim's FCRA rights." (ECF No. 68 at 17).

"Congress enacted the [FCRA] . . . to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). "[T]o ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to [consumer reporting agencies], called 'furnishers' in the statute." *Id.* Consumer reporting agencies are required to provide notices of dispute to furnishers of information. *See* 15 U.S.C. § 1681i(a)(2). Upon "receiving notice . . . of a dispute with regard to the completeness or

accuracy of any information provided by a person to a consumer reporting agency" furnishers are required to

> (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; [and] (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis[.]

15 U.S.C. § 1681s-2(b); *see also Gorman*, 584 F.3d at 1154. A furnisher's investigation of disputed information must be reasonable to satisfy the FCRA. *See Gorman*, 584 F.3d at 1157 ("Requiring furnishers, on inquiry by a [consumer reporting agency], to conduct at least a reasonable, non-cursory investigation comports with the aim of the statute to 'protect consumers from the transmission of inaccurate information about them.'").

In this case, in order to be liable under the FCRA as a furnisher, WTC must have provided credit information to a consumer reporting agency. WTC provides a declaration stating that "[a]ll student loans owned by the [NCSL Trust], including the Loan at issue in the Complaint, are serviced by other entities," that "WTC, as trustee of the [NCSL Trust], does not collect student loan debt," and that WTC has never made any collection efforts as to the loan at issue in this action. (WTC Decl., ECF No. 57-6, ¶¶ 7–8). WTC states that it "does not maintain its own records of payments made under the student loan agreements owned by the [NCSL Trust]," and that it has never reported or furnished information regarding Kim, the Loan at issue, or any other loan owned by the NCSL Trust to credit bureaus. *Id.* ¶¶ 11–13.

Kim relies on documentation described as "Excerpts from Plaintiff's Equifax and Transunion credit reports" to support his claim that WTC is a furnisher of information. (ECF No. 68-1 at 10–12). These communications from Equifax and TransUnion provide account information for Kim and identify the name of the account as "National Collegiate

7

Trust" or "AES/NCT." *Id.* These documents do not reference WTC. *Id.* Further, Kim provides a letter from Equifax dated December 21, 2015 which states in part, "We verified that this item belongs to you. Additional information has been provided from the original source regarding this item. If you have additional questions about this item please contact: *National Collegiate Trust*[.]" *Id.* at 18. The letter does not reference WTC. *Id.* Kim provides other documents with his declaration which reference "American Education Services," "National Collegiate Trust," and "AES/NCT[.]" (ECF No. 68-1). Kim fails to provide any evidence supporting a conclusion that WTC furnished information to a consumer reporting agency regarding this loan. *Id.* Kim fails to provide sufficient evidence to show that a genuine issue of fact exists with respect to whether WTC is a furnisher of information within the meaning of the FCRA.

To establish liability under the FCRA against WTC, Kim must also establish that WTC failed to take the required action under the statute after receiving a notice of dispute from a consumer reporting agency. 15 U.S.C. § 1681s-2(b). WTC provides a declaration stating that

> 15. WTC never received, investigated or responded to any ACDV or other credit dispute relating to the Loan or the Plaintiff.
> 16. WTC does not receive or respond to ACDV's relating to any loans owned by the Trust.
> 17. WTC never received any allegation, report or claim of identity theft relating to the Loan or Plaintiff.
> 19. At no time prior to the filing of the instant litigation was WTC made aware of a credit-reporting dispute or identity theft claim involving the Loan or Plaintiff.
> 20. All collection activities, credit reporting and similar servicing activities required for the student loans owned by the trust are performed by servicing entities.

(WTC Decl., ECF No. 57-6).

Kim contends that "one may infer Equifax, a CRA, notified National Collegiate Trust (the source of the information) of Plaintiff's FCRA dispute" based on a letter to Kim from Equifax which states, in part,

> Please note, when you provide documents, including a letter to Equifax as part of your dispute, the documents may be submitted to one or more companies whose information are the subject of your dispute.
>
> We have researched the credit account. Account # - 2085118472PA0 The results are: We verified that this item belongs to you. Additional information has been provided from the original source regarding this item. If you have additional questions about this item please contact: National Collegiate Trust, 1200 N. 7th St., Harrisburg, PX 17102-1419 Phone: (800) 233-0557.

(ECF No. 68-1 at 18). This documentation does not support the conclusion that WTC received a notice of dispute from Equifax triggering an obligation to conduct a reasonable investigation under the FCRA. Kim fails to provide evidence sufficient to show a genuine issue of material fact with respect to whether WTC received a notice of dispute from a consumer reporting agency.

**B. California Identity Theft Act Claim**

WTC contends that it is entitled to summary judgment on the California Identify Theft law claim because there is no evidence to suggest that WTC is a "claimant" or that WTC reported credit or sought to collect on the loan. Kim contends that WTC is a claimant under the California Identity Theft law because it engaged in negative credit reporting on Kim's account after receipt of his identify theft claim.

California's Identity Theft law allows a 'victim of identity theft' to bring an action for damages, civil penalties, and injunctive relief against a 'claimant to establish that the person is a victim of identity theft in connection with the claimant's claim against that person.'" *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1092 (9th Cir. 2008) (citing Cal. Civ. Code § 1798.93(a) and (c)). Pursuant to the California Identity Theft law,

> A person may bring an action against a claimant to establish that the person is a victim of identity theft in connection with the claimant's claim against that person. If the claimant has brought an action to recover on its claim against the person, the person may file a cross-complaint to establish that the person is a victim of identity theft in connection with the claimant's claim.

9

Cal. Civ. Code § 1798.93(a). A "claimant" is "a person who has or purports to have a claim for money or an interest in property in connection with a transaction procured through identity theft." Cal. Civ. Code § 1798.92(a); *see also Sarukhanov v. J.P. Morgan Chase Bank, N.A.*, 691 F. App'x 383, 384 (9th Cir. 2017) ("The plain statutory terms of Cal. Civ. Code § 1798.93(a) provide that an identity theft victim may pursue an action only against a party that has made a 'claim against that person.'").

In this case, Kim alleges that WTC violated the California Identity Theft law "by continuing credit reporting and debt collection activities against Plaintiff after he had reported to them the identity theft situation and after providing them with a police report." (ECF No. 1 at 21). WTC provides undisputed evidence demonstrating that it cannot be considered a claimant under the California Identity Theft law for any of its conduct in relation to this case. WTC provides evidence to show that the student loan at issue is owned by the NCSL Trust and that all student loans, including the loan at issue, are serviced by other entities. WTC states that it does not collect student loan debt and has never made any collection efforts with regard to the loan at issue. Further, WTC states that it has never contacted Kim for any reason relating to the loan. (WTC Decl., ECF No. 57-6, ¶¶ 7–10). In response, Kim fails to provide evidence sufficient to create a genuine issue of material fact that WTC "has or purports to have a claim for money . . . in connection with a transaction procured through identity theft." *See* Cal. Civ. Code § 1798.92(a). Kim relies upon communications from the NCSL Trust and PHEAA/AES regarding contact with a detective and authority to release information about Kim's account[2] (ECF No. 28-1 at 2 ¶ 7; Exhibit C, ECF No. 28-1 at 20) and an April 14, 2018 collection letter regarding the delinquent loan from PHEAA/AES on letterhead including a NCSL logo (ECF No. 68-3 at 20). However, these documents are not from WTC, do not reference WTC, and do not support a conclusion that WTC had or purported to have a claim against Kim in relation to

---

[2] These documents are attached to Kim's motion for default judgment filed on September 6, 2017. (ECF No. 28-1).

this loan. Further, the state court action in which the NCSL Trust sued Kim regarding the disputed debt does not support the theory that WTC is a claimant. (Kim Decl., ECF No. 68-1 at 3; SUF, ECF 68-2 at ¶ 31). Kim fails to provide evidence sufficient to create a genuine issue of material fact as to whether WTC is a claimant under the California Identity Theft Act.

### C. California Consumer Credit Reporting Agencies Act ("CCCRAA")

WTC contends that the CCCRAA claim is derivative of his other claims. WTC contends that Kim cannot establish that WTC furnished any information to a consumer reporting agency regarding the loan or Kim. Kim asserts that "WTC credit reported the subject account to Equifax at least since July 31, 2013, and after receipt of Mr. Kim's fraud affidavit." (ECF No. 68 at 21). Kim contends that WTC "did credit report the account after it knew or should have known that the information was complete or inaccurate." *Id.*

Pursuant to the CCCRAA, "a person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). The Court of Appeals for the Ninth Circuit has recognized that a private right of action exists to enforce Section 1785.25(a) against furnishers of information. *See Gorman*, 584 F.3d 1147, 1171–73 (9th Cir. 2009). The phrase "incomplete or inaccurate" within the CCCRAA has been interpreted in a matter consistent with the FCRA to mean "patently incorrect or materially misleading." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890–91 (9th Cir. 2010); *see also Kuns v. Ocwen Loan Servicing, LLC*, 611 F. App'x 398, 400 (9th Cir. 2015) (interpreting "incomplete and inaccurate . . . as requiring that furnishers of credit information . . . not only refrain from making any reports that are obviously wrong or missing crucial data, but also that the reports not contain information that is materially misleading.").

In this case, WTC provides undisputed evidence that it did not furnish any information to consumer reporting agencies. (WTC Decl., ECF No. 57-6, ¶¶ 7–13). The Court concludes that Kim fails to present sufficient evidence to raise a disputed issue of

fact as to whether WTC furnished any information to a consumer reporting agency. *See supra* Part IV.A.

### D. Alternate Theories of Liability

WTC contends that it "is not a correct party to this suit" and that the NCSL Trust is a separate legal entity with the capacity to be sued as a Delaware statutory trust. (ECF No. 57 at 12; ECF No. 74). WTC contends that is not responsible for the conduct of the NCSL Trust and cannot be held liable for NCSL Trust's alleged statutory violations in this case. In addition, WTC contends that it is not liable to Kim for PHEAA/AES's loan servicing acts under an agency or vicarious liability theory. WTC contends that these theories were not identified in the Complaint and cannot be introduced at this stage in proceedings. WTC contends that the plain language of the FCRA does not support liability on an agency or vicarious liability theory. WTC contends that "there is no principal/agent relationship" between WTC and PHEAA/AES that would support liability against WTC. (ECF No. 57 at 19).

Kim contends that WTC is the "proper and only party to sue for conduct involving the [NCSL Trust]" as the owner trustee of the NCSL Trust. (ECF No. 68 at 9). Kim contends that WTC has waived its real party in interest defense by failing to assert it in the answer and affirmative defenses. *Id.* Further, Kim contends that the trustee is the real party in interest for statutory investment trusts under California law. *Id.* Kim contends that the NCSL Trust is not a Massachusetts business trust and does not qualify for any exception. *Id.* at 11. Kim contends that agency is a factual issue for the jury to determine. *Id.* at 8.

California law provides that an "ordinary express trust is not an entity separate from its trustees" and that "[a] trust itself cannot sue or be sued." *See Portico Mgmt. Grp., LLC v. Harrison*, 136 Cal. Rptr. 3d 151, 157 (Ct. App. 2011) (citations omitted). "As a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf." *Id.* (citations omitted). However, a Delaware statutory trust "may sue and be sued." Del. Code Ann. tit. 12, § 3804(a) ("A statutory trust may sue and be sued . . . . In

12

furtherance of the foregoing, a statutory trust may be sued for debts and other obligations or liabilities contracted or incurred by the trustees or other authorized persons, or by the duly authorized agents of such trustees or other authorized persons, in the performance of their respective duties under the governing instrument of the statutory trust."); *see also In re Countrywide Fin. Corp. Mortg.-backed Sec. Litig.*, No. 2:11-ML-02265-MRP (ManX), No. 2:13-CV-01118 MRP (MANx), 2014 WL 4162382 at *10 (C.D. Cal., June 18, 2014); *Foster v. Nat'l Collegiate Student Loan Tr. 2007-4*, No. 01-17-00253-CV, 2018 WL 1095760, at *1 n.1 (Tex. App. Mar. 1, 2018) (stating, in reference to the NCSL Trust, that "[a] statutory trust is a juridical entity, separate from its trustee and beneficial owners, that may sue and be sued, own property, and transact business in its own name."); *BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Assoc.*, 247 F. Supp. 3d 377, 409 (S.D.N.Y. 2017) ("While common-law trusts may not be entities with the capacity to sue or be sued . . . the NGN Trusts are Delaware statutory trusts afforded the capacity to sue and be sued under the DSTA.").

In this case, the NCSL Trust is a Delaware statutory trust.[3] (WTC Decl., ECF No. 57-6). As such, the NCSL Trust has the capacity to sue or be sued as a separate legal entity. The Court concludes that Kim fails to provide evidence or law establishing that he was required to bring the FCRA, CCCRAA, and California Identity Theft law claims arising from the NCSL Trust's alleged conduct against WTC as owner trustee of NCSL Trust.

The Ninth Circuit Court of Appeals has not determined whether a party can be liable under the FCRA on a vicarious liability theory. However, some courts have determined that parties can proceed on a vicarious liability theory on an FCRA claim. *See, e.g.*, *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1212 (C.D. Cal. 2007) ("Courts, however, have held that corporations can be vicariously liable for FCRA violations committed by

---

[3] While Kim disputes the NCSL Trust's capacity to be sued, Kim does not dispute that it is a Delaware statutory trust. *See* ECF No. 68 at 12 ("WTC admits that it is the owner of the Trust . . . It also admits it is a Delaware statutory trust.").

their employees."); *see also Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998) ("Failure to impose vicarious liability on a corporation like Federated would allow it to escape liability for 'willful' or 'negligent' violations of the statute. Because a company like Federated can act only through its agents, it is difficult to imagine a situation in which a company would ever be found to have willfully violated the statute directly by obtaining a credit report for an impermissible purpose."). "Under general principles of agency . . . to be liable for the actions of another, the 'principal' must exercise control over the conduct or activities of the agent." *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1173 (9th Cir. 2006) (discussing vicarious liability in the context of an FDCPA cause of action). The existence of a principal-agent relationship is ordinarily a question of fact for the trier of fact to resolve. *See Krueger By and Through Krueger v. Mammoth Mountain Ski Area, Inc.*, 873 F.2d 222, 223 (9th Cir. 1989). However, even assuming that parties can properly proceed under a vicarious liability with respect to causes of action under the CCCRAA, FCRA, and California Identity Theft law, Kim fails to provide sufficient facts for a reasonable trier of fact to conclude that a principal-agent relationship existed between WTC and PHEAA/AES. *See, e.g.*, *Breidenbach v. Experian*, No. 3:12-CV-1548-GPC-BLM, 2013 WL 1010565, at *6 (S.D. Cal. Mar. 13, 2013) ("Lastly, to the extent Plaintiff's FCRA claim against AES rests on a theory of vicarious liability, Plaintiff has failed to sufficiently allege the required agency relationship as discussed above.").

The Court concludes that WTC has demonstrated that it is entitled to summary judgment in its favor on all claims Kim has brought against it.

## V. CONCLUSION

IT IS HEREBY ORDERED that the motion for summary judgment is GRANTED. (ECF No. 57).

Dated: September 7, 2018

*[signature]*
Hon. William Q. Hayes
United States District Court